

# NUMBER 13-05-364-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

H.A. REED D/B/A REED
CONSTRUCTION,                                                    Appellant,

v.

THE STATE OF TEXAS,                                             Appellee.

On appeal from the 36th District Court of San Patricio County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Vela
### Memorandum Opinion by Justice Yañez

A jury convicted appellant, H. A. Reed d/b/a Reed Construction, of felony theft.[1]

The trial court assessed punishment at ten years' imprisonment, suspended the sentence,

---

[1] *See* TEX. PENAL CODE ANN. § 31.03(a), (b), (e)(5) (Vernon Supp. 2007).

and placed appellant on community supervision for a period of ten years.[2] By three issues, appellant contends (1) the evidence is legally and factually insufficient to support his conviction and (2) he was denied effective assistance of counsel. We affirm.

## Background

In May 2003, appellant, a general contractor, entered into a "cost plus" construction contract with the complainants, John and Beverly McGee, to build the McGees a "dream home" on their property.[3] Over the next five months, appellant submitted five "draw requests" for construction expenses, paid by Mr. McGee, in separate checks totaling $123,700.00. Mr. McGee testified that he fired appellant in December when he learned that appellant's $2,500.00 check to Manuel Gonzalez, the lead mason subcontractor, had "bounced." Mr. McGee asked for an accounting. According to McGee, of the $123,700.00 paid to appellant, the materials and labor expended on the construction amounted to $47,389.55, leaving $76,310.45 in unaccounted funds expended by the McGees. The McGees contacted the district attorney's office. Following a jury trial, appellant was found guilty of theft of more than $20,000.00, but less than $100,000.00.

## Standards of Review and Applicable Law

Evidence is legally insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a

---

[2] The trial court also imposed a $10,000 fine and ordered appellant to pay restitution to the complainants in the amount of $76,310.45.

[3] In 1995, the McGees won almost five million dollars in the Texas State Lottery.

reasonable doubt.[4] The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.[5] Thus, when performing a legal-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.[6] We must resolve any inconsistencies in the testimony in favor of the verdict.[7] The legal sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge for the case.[8]

When conducting a factual-sufficiency review, we view all of the evidence in a neutral light.[9] We may set the verdict aside if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence.[10] However, while we may disagree with the jury's conclusions, we must exercise appropriate deference to avoid substituting our judgment for that of the jury, particularly in matters of credibility.[11] Finally, we must discuss the

---

[4] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

[5] *Jones*, 944 S.W.2d at 647.

[6] *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

[7] *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

[8] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[9] *See Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

[10] *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).

[11] *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); *see Watson*, 204 S.W.3d at 414 (stating that a court should not reverse a verdict it disagrees with, unless it represents a manifest injustice

evidence that, according to appellant, most undermines the jury's verdict.[12]

A person commits theft if the person unlawfully appropriates property with the intent to deprive the owner of the property.[13] Appropriation is unlawful if it is without the owner's effective consent.[14] An owner's consent is not effective if it is induced by deception.[15] Among other meanings, "deception" includes:

> promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.[16]

To constitute theft, the defendant must intend to deprive the owner of the property at the time the property is taken.[17] The intent to deprive is determined from the words and acts of the accused.[18] "In determining whether the evidence is legally sufficient to establish whether appellant had criminal intent to commit theft, we examine the evidence in the record in a light most favorable to the jury's verdict, which includes evidence pertaining to whether he personally gained from what was allegedly taken, whether he partially

---

even though supported by legally sufficient evidence).

[12] *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

[13] *See* TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2007).

[14] *See id.* at § 31.03(b)(1).

[15] *See id.* at § 31.01(3)(A).

[16] *See id.* at § 31.01(1)(E).

[17] *Wilson v. State*, 663 S.W. 2d 834, 836-37 (Tex. Crim. App. 1984 (en banc); *Peterson v. State*, 645 S.W.2d 807, 811 (Tex. Crim. App. 1983) (op. on reh'g).

[18] *King v. State*, 174 S.W.3d 796, 810 (Tex. App.–Corpus Christi 2005, pet. ref'd).

4

performed on any of the representations that were made to the complainants, whether he used deception to obtain property, and whether any inferences can properly be drawn from the combined force of the circumstantial evidence."[19]

"The critical distinction between conduct that is criminal versus civil in nature is whether the record shows deception and not merely a failure to perform."[20] A claim of theft made in connection with a contract requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property.[21] "If no more than intent and appropriation is shown in a contract claim, nothing illegal is apparent, because under the terms of [a contract] individuals typically have the right to 'deprive the owner of property,' albeit in return for consideration."[22] In a contract claim, the State must prove the defendant did not perform the contract and knew he was not entitled to the money, not merely that there is a dispute about the amount rightfully owed.[23] The mere fact that one fails to return funds paid in advance after failing to perform a contract does not constitute theft.[24] If money was voluntarily given to the appellant pursuant to a contractual agreement and there is insufficient evidence in the record to show the money was obtained by

---

[19] *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd).

[20] *Id.* at 34.

[21] *Jacobs v. State*, 230 S.W.3d 225, 229 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (citing *Baker v. State*, 986 S.W.2d 271, 274 (Tex. App.–Texarkana 1998, pet. ref'd)).

[22] *Id.* (quoting *Baker*, 986 S.W.2d at 274).

[23] *Id.*

[24] *Id.*

deception, the conviction cannot stand.[25]  In sum, the State must show a rational factfinder could have found appellant had no intention of fulfilling his obligation under the agreement, and his promise to perform was "merely a ruse to accomplish theft by deception."[26]

**Analysis**

By his first issue, appellant contends the evidence is legally insufficient to establish (1) an unlawful appropriation, (2) a lack of effective consent by reason of deception, and (3) the requisite "intent to deprive."  Appellant argues there was no unlawful appropriation by means of deception because (1) McGee voluntarily paid funds to him pursuant to the terms of the construction contract, and (2) McGee's voluntary payments to subcontractors were unnecessary because no liens had been filed against the property by subcontractors. Appellant also argues there is no evidence of the "intent to deprive" element because McGee admitted that he fired appellant.

As noted above, a claim of theft made in connection with a contract requires proof of more than "intent to deprive" the owner of property and subsequent appropriation because under a contract, an individual typically deprives the owner of property in exchange for consideration.[27]  Thus, our inquiry must focus on whether there is sufficient evidence to show that the money McGee paid appellant pursuant to the contract was obtained by deception.[28]

---

[25] *Id.* at 229-30 (citing *Phillips v. State*, 640 S.W.2d 293, 294 (Tex. Crim. App. 1982); *Baker*, 986 S.W.2d at 274).

[26] *Id.* at 230 (citing *King v. State*, 17 S.W.3d 7, 15 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd)).

[27] *Id.* at 229.

[28] *See id.* at 229-30.

At trial, Mr. McGee testified that appellant said he and Carole Wilkinson were partners in "Wilkinson Reed Development." Wilkinson is a trust officer at the local Stewart Title office. According to McGee, appellant explained that the construction funds would be deposited into an account with Stewart Title, and that invoices would be paid by Wilkinson out of the escrow funds. McGee testified that he believed he had an escrow account at Stewart Title, an arrangement that "made it legitimate." He also stated that if he had known that the funds would not be deposited into an escrow account, he would not have done business with appellant. According to McGee, another reason for his belief that appellant and Wilkinson were partners was appellant's office sign, which read "Wilkinson Reed Development."

McGee testified that he paid appellant five draws totaling $123,700.00 between May and December 2003. McGee later learned that the first check to appellant had been deposited into a "Reed Construction Company" account; the four subsequent checks were simply cashed by appellant. After McGee fired appellant in December, he learned that many of the vendors from whom appellant had presented invoices had not been paid; McGee paid the outstanding bills to vendors from his savings, which "cleaned out [his] savings account." McGee testified that $18,000.00 out of the second and third draw requests was in payment for windows. After appellant was fired, McGee learned that the windows had been ordered, but not paid for. When the windows arrived at the glass company, McGee paid the company directly for the windows. McGee testified that two draw requests, one for $15,000.00 and a second for $5,500.00, were designated for payment to Bracht Lumber Company for cinder block. McGee later learned that despite the draws, two outstanding invoices from Bracht Lumber, dating back to November 2003,

for a total of $8,118.84, remained unpaid. Similarly, McGee testified that two draws totaling $15,000.00 were for "Spancrete," a concrete product to be used in the roof. Ronal Olfers, an employee of the concrete manufacturer, testified that appellant had accepted the bid proposal for the job, but the product had neither been manufactured nor paid for.

McGee testified that he fired appellant in December because appellant gave Manuel Gonzales, the lead mason in the masonry crew, a $2,500.00 check that "bounced." McGee learned that although he had paid appellant $14,000.00 out of the third and fourth draws for mason labor, appellant had only paid out $6,000.00. When McGee called appellant about the check, appellant said he would make the check good "when he [got] around to it." McGee said that was "not acceptable," and paid the masonry crew $2,500.00 out of his checking account. McGee testified that three days after he gave appellant a draw-request check, appellant came by the job site driving a new Harley Davidson motorcycle.

On cross-examination, McGee admitted that the contract does not contain any provision regarding an escrow account, but stated he "was just going by what [appellant] told [him]."

Beverly McGee testified that appellant explained that the construction funds (checks from the McGees) would be deposited into an escrow account with Stewart Title, under the control of Wilkinson, his partner. As invoices were presented to Wilkinson, she would pay them from the account. Ms. McGee testified that having the money in an escrow account "seemed like a safe thing to do," and that had she known the funds were going into a private account, she would not have agreed to the contract because such a practice did not make "good business sense."

Carole Wilkinson testified that she is an escrow officer at Stewart Title. She testified

8

that she and appellant had been partners, but that she had "phased out" of the business when she became an escrow officer at Stewart Title.[29]  She testified that her office researches title on contracts between builders and owners, but does not set up escrow accounts for purposes of home construction.  She testified she had never accepted monies from appellant for an escrow account for the McGees.

The State presented testimony from several other witnesses, including Gonzales, the masonry subcontractor, and the bookkeeper for the glass company.  The record includes a photograph of the job site, depicting several partially-constructed block walls.  Appellant did not testify and did not present any witnesses.

We note that if a contract is partially or substantially performed, then intent to commit theft through deception is not shown by the evidence.[30]  Here, appellant had performed some work on the project.  However, the evidence before us shows appellant deceived the McGees by falsely telling them that the construction funds would be deposited in an escrow account.  The McGees testified had they known that the funds would not be placed in an escrow account, they would not have agreed to the contract.  The evidence also shows that appellant told McGee that the draws were designated for particular construction costs, but the funds were not used to pay for the designated expenses.  Specifically, appellant took funds and represented that they were needed to pay for windows, cinder block, and "spancrete"; the funds, however, were not used for those purposes.  Instead, the first check was deposited in appellant's business account,

---

[29] Wilkinson testified that as partners, appellant built houses and she sold them.

[30] *Jacobs*, 230 S.W.3d at 231-32 (citing *Baker v. State*, 986 S.W.2d 271, 275 (Tex. App.–Texarkana 1998, pet. ref'd)).

9

and four subsequent checks were cashed. We conclude that the evidence shows that the proceeds of the checks were not used for the purposes represented by appellant. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have inferred that appellant took the funds without the intent to perform the contract and with the intent to deprive the McGees of the funds. We hold the evidence is legally sufficient to support appellant's conviction and overrule his first issue.

By his second issue, appellant contends the evidence is factually insufficient. Appellant makes the same arguments in connection with his factual sufficiency complaint. Specifically, appellant argues: (1) there was no unlawful appropriation by deception because the contract did not provide for an escrow account; (2) McGee's payments to subcontractors were voluntary and unnecessary because no liens were filed against the property; and (3) there was no proof of the "intent to deprive" element because appellant was fired and therefore could not complete the project.

We note that although appellant cross-examined the State's witnesses, he presented no evidence during the trial, and there was no conflicting evidence for the jury to resolve. We have already addressed appellant's arguments in connection with his legal sufficiency challenge. We further note, however, that we are unpersuaded by appellant's argument that the contract did not contain any reference to an escrow account because the McGees testified that appellant told them he would set up an escrow account at Stewart Title. With respect to appellant's argument that the McGees' payments to the subcontractors were unnecessary because no liens had been filed, we note that even if the McGees had not paid the subcontractors, the State presented evidence that appellant represented that the purpose of the draws was to pay subcontractors, but did not use the

10

funds for that purpose. As to appellant's argument that he could not perform the contract because he was fired, we have found that the State presented evidence from which a rational juror could infer that appellant took the funds without the intent to perform the contract and with the intent to deprive the McGees of the funds.

We have conducted a neutral review of the evidence and find that it is factually sufficient to support the jury's verdict in this case. We overrule appellant's second issue.

### Ineffective Assistance

*Strickland v. Washington*,[31] sets forth the standard of review for effectiveness of counsel.[32] *Strickland* requires a two-part inquiry.[33] The defendant must first show that counsel's performance was deficient, in that it fell below an objective standard of reasonableness.[34] Second, the defendant must further prove there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[35] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[36]

The determination regarding whether a defendant received effective assistance of

---

[31] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[32] *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

11

counsel must be made according to the facts of each case.[37] An appellate court looks to the totality of the representation and the particular circumstances of the case in evaluating counsel's effectiveness.[38]

The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective.[39] There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[40] To defeat the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."[41] Generally, the record on direct appeal will be insufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard.[42]

By his third issue, appellant contends he was denied effective assistance of counsel because his trial attorneys did not interview any of the State's witnesses. At the hearing on appellant's motion for new trial, appellant testified he did not think his attorneys prepared properly for trial because they did not know what the State's witnesses were going to say.

---

[37] *Id.*

[38] *Id.*

[39] *Id.* at 813.

[40] *Id.*

[41] *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

[42] *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Appellant's counsel testified that he discussed with appellant whether appellant should testify at his trial; although appellant made the decision, his counsel recommended that he not testify for several reasons, including that appellant's story "was not real consistent." With regard to the State's witnesses, appellant's counsel testified that he and his co-counsel did talk with some witnesses, but did not contact others because they "had a pretty good idea in terms of what their testimony was going to be." Counsel stated that he spoke with three or four character witnesses about appellant's character. Counsel testified that they discussed calling appellant's civil trial lawyer as a fact witness to testify that the theft allegation was a civil, not a criminal matter; they did not do so, however, because such testimony could have "opened the door" to damaging testimony regarding appellant's business transactions with other customers. Appellant's counsel was asked whether appellant "[gave] you any witnesses as to the [theft allegation]." Counsel stated that appellant had not.

We conclude that appellant has met neither prong of *Strickland*.[43] We overrule appellant's third issue. We affirm the trial court's judgment.


_____
LINDA REYNA YAÑEZ,
Justice


Do not publish. TEX. R. APP. P. 47.2(b).

Memorandum opinion delivered and filed
this the 27th day of March, 2008.

_____

[43] *See Thompson*, 9 S.W.3d at 812.